FILED

2008 Sep 15 AM 09:33

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CANTON

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| CYNTHIA JAYNE CLINE, | CASE NO. 05-66866 |
| Debtor. | ADV. NO. 07-6165 |
| ANNE PIERO SILAGY, | JUDGE RUSS KENDIG |
| Plaintiff, | |
| v. | MEMORANDUM OF OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE AFFIDAVITS (NOT INTENDED FOR PUBLICATION |
| CYNTHIA JAYNE CLINE and JOHN CLINE, | |
| Defendants. | |

Two motions in the above-referenced adversary are now before the Court. The first is the Motion for Summary Judgment in the above-captioned matter, filed April 3, 2008 by Plaintiff Anne Piero Silagy, Chapter 7 Trustee ("Plaintiff" or "Trustee"). Plaintiff filed the instant motion under Fed. R. Civ. P. 56(a), incorporated into bankruptcy practice by Fed. R. Bankr. P. 7056. Defendants responded separately; Defendant Cynthia Jayne Cline ("Cynthia Cline" or "Cynthia") filed her reply in opposition on May 10, 2008, and Defendant John Cline ("John") filed his motion and memorandum in opposition on May 12, 2008.

Also before the Court is Plaintiff's Motion to Strike Affidavits of Defendants Cynthia Jayne Cline and John Cline, filed on May 19, 2008. Plaintiff filed the latter motion under Fed. R. Civ. P. 56(e), incorporated into bankruptcy practice by Fed. R. Bankr. P. 7056, alleging that under that rule and applicable law, Defendants' affidavits were defective because they contained inadmissible parol evidence. Defendant Cynthia Jayne Cline ("Cynthia Cline" or "Cynthia") filed her response on May 25, 2008; Defendant John Cline ("John") filed his response on June 13, 2008. Because the issues raised in the motion to strike and responses thereto are substantially identical to those raised in the motion for summary judgment and responses thereto, the Court has consolidated them and deals with both in this opinion.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(E). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor-Defendant Cynthia Jayne Cline ("Cynthia") and Defendant John Cline ("John") were married in 1976. On April 14, 2004, they concluded a separation agreement, which was recognized and entered by the Stark County Common Pleas Court, Domestic Relations Division on April 28, 2004. The ultimate issue before the Court is the legal character of certain payments made by John Cline under this separation agreement.

Section 2 of the separation agreement provided that Cynthia would maintain possession of the marital residence and that John would quitclaim his interest therein to her. John did so via a quitclaim deed granted on April 19, 2004. Section 2 also provided that, notwithstanding that he had quitclaimed his interest and found other living arrangements, John would continue to pay the first and second mortgages on that residence:

> Husband shall be responsible for the monthly payment of the first and second mortgage on said real estate until such times as the Wife dies, remarries, cohabitates with a non-relative male, the Husband dies, or until such time as the mortgage are paid off, whichever first occurs. The Husband shall be entitled to claim the interest from the first and second mortgages on his tax returns.
>
> In addition thereto, the Husband shall pay the taxes and insurance on said real estate until such time as the Wife remarries, cohabitates with a non-relative male, the Husband dies or until May 1, 2014, whichever first occurs, at which time the Wife shall be responsible and liable for said taxes and insurance.
>
> In the event the Wife no longer lives in the residence, the residence shall be sold. At that time, the Husband shall pay to the wife the amount of the mortgage payment at the interest rate the mortgage was financed at, until the residence would have been paid in full.

(Pl. Ex. A, para. 2.)

Section 5 of the separation agreement provides, in full: "Neither party shall pay spousal support to the other and the Court shall not retain jurisdiction to award the same." (Pl. Ex. A, para. 5.)

Additionally, both defendants executed and properly had notarized an "Acknowledgement" at the conclusion of their separation agreement, providing in part:

> The parties acknowledge that any provisions contained in their Separation

> Agreement relating to a division of their assets and liabilities cannot be changed or modified by the Court. They further understand that the Court will not be able to award alimony or spousal support, or modify any provisions providing therefore unless the Separation Agreement expressly confers continuing jurisdiction upon the Court to do so.

(Pl. Ex. A 6.)

On October 6, 2005, Cynthia filed for protection under Chapter 7 of the Bankruptcy Code. The meeting of creditors was held on November 29, 2005. On December 7, 2005, Trustee filed with the Court her notice that the meeting had been held and concluded; Trustee checked the field stating that she believed this was an asset case, and wrote a comment: "R/E equity/prop. settlement." On January 5, 2006, Trustee notified Debtor's counsel that she believed the monthly payments provided for under the separation agreement to be a property settlement and therefore property of the estate.

On September 12, 2006, Cynthia transferred her interest in the real property to a third party, as evidenced by a warranty deed filed on September 18, 2006. Pursuant to the terms of Section 2 of the separation agreement, John has continued to make monthly payments to Cynthia in the amount that the mortgage payments on the erstwhile marital residence would have been.

On November 8, 2007, Trustee commenced the underlying adversary proceeding. Trustee's position is that the payments John has made to Cynthia since the sale of the home constitute a property settlement and are therefore property of the bankruptcy estate; both former spouses' positions are that these transfers are spousal support and are therefore not property of the bankruptcy estate.

On April 3, 2008, Plaintiff filed a motion for summary judgment in the underlying adversary proceeding. Cynthia Cline filed a response on May 10, 2008; John Cline filed his own response on May 12, 2008. Defendants each also attached a small number of exhibits to their memoranda in opposition to Plaintiff's motion. Two of these exhibits, one from each defendant, are the affidavits containing paragraphs being challenged by Trustee in the instant motion to strike. (Cynthia's Ex. 2; John's Ex. 2.) Trustee argues that these affidavits attempt to introduce evidence that contradicts the plain language of the separation agreement, in violation of the parol evidence rule, and that the offending paragraphs should be stricken from the affidavits.

Also submitted as exhibits are tax returns from 2004, 2005, 2006, and 2007 for each defendant. Defendants submitted their returns from 2005, 2006, and 2007 as exhibits with their respective responses, above. Trustee submitted Defendants' 2004 tax returns with her Consolidated Reply. The admissibility of none of these has been challenged. Defendants did not report the payments at the heart of this dispute as alimony on their tax returns in 2004, but did so in 2005, 2006, and 2007.

# LEGAL ANALYSIS

## I. Standard of Review - Summary Judgment (Main Motion)

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The moving party carries the initial burden and must "identify[] those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing F.R.C.P. 56(c)). Evidence, including all reasonable inferences, considered on a motion for summary judgment must be viewed in the light most favorable to the non-movant. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986). The moving party must demonstrate that no reasonable trier of fact could make a finding for the non-moving party. *See* Calderone v. U.S., 799 F2d 254, 259 (6th Cir. 1986) (quotation omitted). If the moving party satisfies its burden, the non-movant cannot merely rest on the pleadings, but must introduce specific evidence demonstrating the existence of issues of fact. Huizinga v. U.S., 68 F.3d 139 (6th Cir. 1995) (citing Celotex Corp., 477 U.S. at 324).

## II. Parol Evidence and the Challenged Affidavits (Motion to Strike)

Because the standard for summary judgment requires the Court to consider the affidavits in determining if summary judgment is appropriate, the Court must consider Plaintiff's Motion to Strike at the outset, since the motion targets portions of affidavits that would be before the Court under Rule 7056.

Fed R. Civ. P. 56(e)(1), incorporated into bankruptcy practice through Fed. R. Bankr. P. 7056, provides, in relevant part, that affidavits proffered in opposition to motions for summary judgment "shall set forth such facts as would be admissible in evidence." Fed R. Civ. P. 56(e)(2) subsequently imposes an obligation to respond with "specific facts showing a genuine issue for trial" if an opposing side properly makes and supports a summary judgment motion.

The issue, therefore, is whether the challenged portions of the affidavits would be admissible in evidence, or would instead be barred by the parol evidence rule. This is not as straightforward a question as one would hope, because the Ohio Supreme Court sometimes expresses the parol evidence rule in broad terms, and sometimes in narrower

terms.

Ohio has adopted the traditional formulation of the parol evidence rule: "[A]bsent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." Galmish v. Cicchini, 734 N.E.2d 782 (Ohio 2000), quoting 11 Williston on Contracts § 33:4 (4th Ed. 1999). The rule by its terms only precludes extrinsic evidence if that evidence (i) attempts to vary, contradict, or supplement an unambiguous, integrated writing and (ii) is proffered to prove a prior or contemporaneous oral agreement, or a prior written agreement. Under this version of the rule, not all extrinsic evidence is parol evidence.

However, the Ohio Supreme Court has also on occasion articulated a much more robust parol evidence rule, one which makes no distinction between parol and extrinsic evidence in the context of evidence offered to explain the meaning of terms of a contract unambiguous on its face. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Shifrin v. Forest City Enterprises, Inc., 597 N.E.2d 499, 501 (Ohio 1992). "When a term in an agreement is unambiguous, then the words must be given their plain, ordinary and common meaning; however, when the term is not clear, parol evidence is admissible to explain the meaning of the words." Forstner v. Forstner, 588 N.E.2d 285, 288 (Ct. App. Ohio 1990).

The difference is potentially relevant here. Defendants proffer evidence that is not evidence of any prior oral or written agreement nor any contemporaneous oral agreement. Rather, their testimony bears directly on the interpretation of the separation agreement itself and does not purport to refer to any other agreement. Nevertheless, it is extrinsic evidence–it comes from beyond the four corners of the contract. However, the Court finds that this distinction is irrelevant for its present purposes because the language of the contract is not clear and unambiguous, as explained in Part III, infra. The end result is that under the Galmish formulation, the proffered evidence is admissible because it is not evidence of a prior written agreement nor of a prior or contemporaneous oral agreement. Under the Shifrin formulation, the evidence is admissible because the language of the contract is unclear and ambiguous.

### III. Property Settlement vs. Spousal Support

There is actually some ambiguity in the law regarding whether the determination of the existence of a spousal support obligation is a question of law or fact. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined ... However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." Davis v. Loopco Ind., Inc., 609 N.E.2d 144, 145 (Ct. App. Ohio 1993) (quotations and internal citations omitted). "Since a separation agreement is a contract, its

interpretation is a matter of law. It is subject to the same rules of construction as other contracts." Forstner, 588 N.E.2d at 288. A separation agreement is both a contract and, if incorporated into a decree of divorce, a judgment as well. Vaught v. Vaught, 441 N.E.2d 811, 813 (Ct. App. Ohio 1981). However, the Sixth Circuit has held that the determination of whether an obligation constitutes spousal support is a "factual determination" reviewed under the "clearly erroneous" standard. In re Sorah, 163 F.3d 397, 400 (6th Cir. 1998); In re Calhoun, 715 F.2d 1103 (6th Cir. 1983) (bankruptcy court's determination of whether a loan assumption constituted a support obligation was to be reviewed for clear error). While both Sorah and Calhoun involved nondischargeability actions under § 523(a)(5), not turnover actions under § 542, the Court finds the caselaw from those actions instructive because the central issue is still often the distinction between a property settlement and spousal support, which turns on the intrinsic characteristics of the obligation, not any concerns unique to dischargeability actions. There is therefore no reason not to apply the same rules and reasoning in the current context.

For its immediate purposes, the Court proceeds under the assumption that it is being asked to make a determination of law, not fact. The Court is interpreting a contract, which is traditionally a legal matter. That contract has been incorporated into a state court judgment; interpreting the judgments of other courts is likewise a matter of law.

Contrary to Plaintiff's contention, the Court cannot here say that the contract is as clear and unambiguous. This ambiguity flows almost entirely from the fact that the contract does not act like what it purports to be. On the one hand, paragraph 5 of the separation agreement does state that "[n]either party shall pay spousal support to the other and the Court shall not retain jurisdiction to aware the same." In addition, the text of the Acknowledgment signed by the parties provides that "the Court will not be able to award alimony or spousal support."

Plaintiff urges the Court to look no further than that, but even before considering any factual evidence whatsoever, the provisions of this separation agreement raise questions about their actual nature. While paragraph 5 of the separation agreement vociferously disclaims that the agreement provides for either party to pay the other alimony or spousal support, paragraph 2 reads much more like a spousal support provision than a property settlement provision. Most specifically, the conditions under which John's obligation to Cynthia terminates are the kinds of concerns more typically attendant alimony and spousal support determinations, not property settlements: death, cohabitation, or remarriage. See Clark v. Clark, 168 Ohio App. 547, 2006-Ohio-4820, 860 N.E.2d 1080 (2006); Piscione v. Piscione, 619 N.E.2d 1030 (Ct. App. Ohio 1992) (cohabitation); McClusky v. Nelson, 641 N.E.2d 807 (Ct. App. Ohio 1994) (remarriage). Ohio has codified the termination upon the death of either party as a statutory default rule. O.R.C. § 3105.18(B). In addition, in 1991, Ohio added § 3105.18(E) to § 3105.18, effectively superceding Dunaway v. Dunaway, 560 N.E.2d 171 (Ohio 1990), changing the legal default rule for the treatment of alimony upon remarriage from one under which spousal support persists after remarriage only if the parties have expressly agreed for it to do so to one under which courts are prohibited from modifying the amount or terms of spousal support absent both a determination that the

parties' circumstances have changed and a provision in the divorce decree or separation agreement integrated therein specifically authorizing such a modification. See, e.g., Lewis v. Surface, 2002-Ohio-7287 (Ct. App. 2002) (not reported); Crissinger v. Crissinger, 2006-Ohio-754 (Ct. App. 2006) (not reported).

In addition, John Cline raises another legal argument, untied to extrinsic evidence, in asserting that "[t]he general rule in Stark County Domestic Relations Court is to provide spousal support in the ration of one (1) year of spousal support for every three (3) years of marriage. Since the parties were married nearly thirty (30) years, Cynthia Cline would be entitled to approximately ten (10) years of spousal support." John's obligation to pay the taxes and insurance (though not, contrary to Defendant's claims in his brief, the mortgage payment as well) expires on May 1, 2014, ten years after the April 2004 entry of the separation agreement, even if Cynthia has not died, remarried, or cohabited by this time. This appears to be more evidence from within the four corners of the document itself that these payments were designed as spousal support. The Court is somewhat cautious about how much weight it ascribes John's argument here. John cites no authority for the existence or use of such a formula in the Stark County Domestic Relations Court, though the use of such a three-to-one formula was held not to be an abuse of discretion (though far from resoundingly endorsed) in Manley v. Manley, No. 20426, 2005 WL 78500 (Ct. App. Ohio Jan. 14, 2005). In fact, the language used by the state appellate court in that case strongly suggests that the domestic relations court's decision to use a formulaic three-to-one approach stood only because of the protection given the latter by the "abuse of discretion" standard, and that the domestic relations court should eschew such a practice thenceforth. Id. at ¶ 9 ("The trial court should not, however, use a formula except as a starting point in determining what spousal support to award in a long term marriage.") Duration of marriage is only one of the factors that courts are to look at in determining whether to award spousal support. Ohio Rev. Code § 3105.18(C)(1)(e). Domestic relations courts are to look at the entire panoply of factors enumerated by the statute, and not base their decisions on any one of them in isolation, including duration of marriage. Kaechle v. Kaechle, 518 N.E.2d 1197 (Ohio 1988). However, in the instant case, the duration of support was determined by the parties themselves, not by the court; therefore, there is no issue here of the use or abuse of judicial discretion in determining the maximum duration of spousal support payments. In addition, the fact that these payments appear to be calculated using the same formula that domestic relations courts have–properly or otherwise–been known to apply in calculating spousal support obligations is evidence from within the four corners of the contract itself that these payments, whatever their moniker, are in fact spousal support payments.

In Sorah, the court elucidated a rule for determining spousal support that is not contingent on any concerns unique to dischargeability actions, but is instead contingent on the content of the agreement establishing the underlying obligation:

> There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck. In determining whether an award is actually support, the bankruptcy court should first consider whether it "quacks" like support. Specifically, the court should look to the traditional

> state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.
>
> An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court.

Sorah, 163 F.3d at 401. In the instant case, two out of the three enumerated indicia are present. The conclusive presumption that an obligation is spousal support only arises if all three criteria are present, and the first criterion is clearly lacking. However, the obligation is now a direct payment to the former spouse, and has been at least since September 12, 2006, when the property itself was sold. In addition, payments are clearly contingent upon events such as the death of either party, the wife's remarriage, and the wife's cohabitation with a non-relative male. Finally, Sorah also requires a court to look at "any other[] [factors] that the state support statute considers." Id. "Other indicia of a support obligation include: (1) the disparity of earning power between the parties; (2) the need for economic support and stability; (3) the presence of minor children; and (4) marital fault." In re Hammermeister, 270 B.R. 863, 864 (Bankr. S.D. Ohio 2001). The first, second, and third of these, what the Hammermeister court termed "secondary indicia of support," id., are also present here. The disparity of earning power between the parties is more than five to one: in terms of gross income, John made nearly $84,000 in 2007; without these disputed payments, Cynthia earned less than $15,000. The need for economic support and stability is also clearly present here: the marriage lasted thirty years. Finally, the ex-wife claims the couple's minor granddaughter as a dependent, who was four years old as of the petition date.

In Hammermeister, the court determined that the former husband's obligation to pay half of his ex-wife's mortgage payment was not spousal support, because only one of the "primary" Sorah indicia was present (the second one), and the persuasive force of the "secondary indicia" was effectively neutralized by the fact that the state court had already been called upon to consider those factors under the state support statute and specifically found that the ex-wife was not entitled to spousal support. By contrast, in the instant case, two out of three of the primary Sorah indicia of support are present, as are three out of the four state-specific secondary indicia are present. The latter factors are still fresh for this Court's consideration, as there is no state court judgment weighing them in either direction.

Therefore, while there may be no conclusive presumption that this is in fact support, the balance of the factors weighs heavily in favor of such a finding. It bears essentially every hallmark of spousal support except the name.

For the above reasons, the Court concludes as a matter of law that the payments John

made and continues to make to Cynthia constitute a spousal support obligation. Because this is the only issue in Plaintiff's complaint for declaratory judgment, summary judgment for Defendants and disposition of this adversary proceeding is warranted now, despite the fact that their motions only opposed granting Plaintiff summary judgment and did not move for summary judgment themselves.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

John J Rutter
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308

Donald R Little
1400 N Market Ave
Canton, OH 44714-2608

Wayne W Sarna
Community Legal Aid Services, Inc.
First National Tower, 7th Floor
Youngstown, OH 44503